## Commonwealth ex rel. Triola v. Triola

*Edwin Krawitz*, for relatrix.

*John J. Pentz, Jr.*, for defendant.

DAVIS, P. J., December 31, 1966.—Robert V. Triola, defendant in this child custody proceeding, has addressed certain interrogatories to Judith Ann Triola, relatrix, to which the latter objects on the ground that they are irrelevant. The proceeding was instituted June 25, 1965, by the filing of relatrix's petition for a writ of habeas corpus executed by her on June 17, 1965, averring that on May 4, 1965, defendant had taken their three year old son, Christopher Triola, from relatrix, the mother, without her consent. The parties had one other child, Timothy, then little over one year of age. A divorce action brought by relatrix against defendant (as of February term, 1965, no. 307) was still pending. After the habeas corpus petition was executed, but before it was filed, an incident occurred at 7:30 p. m. on June 21, 1965, as the result of which relatrix and her brother, Elroy Schipper, were indicted (as of September sessions, no. 3) for assault and battery upon the persons of Frances Jurgens, defendant's mother, and Mildred Smith, his aunt, at a time when they had Christopher Triola with them in their automobile. Against this background, on July 3, 1965, the parties executed a detailed custody agreement in the form of a stipulation of parties and counsel. This court, on July 15, 1965, entered an order approving the stipulation providing that the parties should be as fully bound thereby as if a hearing on the habeas corpus petition had been held. Subsequently, on January 6, 1966, a decree was entered granting relatrix an absolute divorce from defendant; and, on September 29, 1966, relatrix and Elroy Schipper were acquitted of the assault and battery charge.

The original stipulation and order of July 15, 1965, had given principal custody of the children to relatrix, and qualified custody on alternate weekends, holidays,

etc., to defendant. On April 1, 1966, defendant filed a petition to amend the original order, seeking two objectives: (1) temporary custody of the two children pending determination of the petition; and (2) the award of custody to defendant, and of reasonable visitation rights to relatrix. The same day, this court awarded temporary custody of the children to defendant and fixed April 7, 1966, as the date for the hearing. On that date, after receiving testimony, the court entered an order continuing the order of April 1 to April 23, 1966, but directing that thereafter, the original order of July 15, 1965, should be reinstated. While some testimony had been taken on April 7, it was contemplated that more should be taken before final disposition of the petition to amend. Before that could be done, counsel for defendant, on July 12, 1966, filed interrogatories containing the following questions:

"1. What are the names and addresses of the place or places, whether hotel, resort or any other establishment or institution, where you stayed commencing on Friday, June 3, 1966 to June 7, 1966?

"2. Did you travel to and from, or do either, with any male person, other than your immediate family and close relatives?

"A. If so, what is the name of the male person?

"3. If question No. 2 is answered in the affirmative, did said male person stay at any of the above places from June 3, 1966 to June 7, 1966 at the same time that you were staying in said places which you have given in answer to question No. 1?

"4. What were your reasons, or reason, for the trip away from Monroe County from Friday, June 3 to Tuesday, June 7, a portion of which period of time was a period of time when you were required to have custody of your two children pursuant to the Order of Court in the above entitled action?

"5. Why did you not advise Robert V. Triola of

your absence during the periods of time from June 3, 1966 to June 7, 1966 that you were required to have custody of said children pursuant to said Order?"

It has been pointed out in Rearick v. Griffith, 27 D. & C. 2d 451, 453, 454 (C. P. Chester Co., 1962), that although the rules of discovery were greatly relaxed by the amendments of 1954, Pennsylvania Rule of Civil Procedure 4007(a) still provides two restrictive limits within which it must be held: relevancy and substantial aid to preparation of pleadings or to preparation for trial. Here, in a child custody proceeding, the issue of relevancy presents a double aspect: (1) the tendency of the questions to reveal the character of custodial care which the children are receiving; and (2) the relevancy of the questions to the case *as pleaded*. Many types of action involve a fixed situation determined as of the time when the complaint is filed; but child custody proceedings necessarily deal with a situation of the parties which continuously is susceptible to change. Orders in such cases lack the customary degree of finality, and the court having jurisdiction is always prepared to modify the custody order if changed circumstances make such action advisable: Commonwealth ex rel. Insalaco v. Delconte, 413 Pa. 221, 223, 196 A. 2d 353-55, (1964); Commonwealth ex rel. Thomas v. Gillard, 203 Pa. Superior Ct. 95, 198 A. 2d 377 (1964). Questions nos. 1, 2 and 3 are clearly germane to the overall issue of custodial care, and the response to them should be made available to the court before final disposition of the petition is made. Although the incident which they are calculated to develop was not, and could not have been, specifically pleaded in the petition, these questions have a measure of relevance in amplification of the averments of paragraph 11, which, in part, reads as follows:

"11. The Petitioner [Relatrix] has openly and notoriously associated with numerous men, both prior

to and after the time of her divorce, which conduct has been continuous and open since the separation of the parties in March 1965 to the present time, which consists of the following:

"...

"(e) The Petitioner has left the children with Carl Wades, the baby sitter, while she has been out evenings and away on weekends with other men, which conduct has occurred frequently and regularly throughout the time of the parties' separation to the present time".

We are not inclined, under the circumstances of this case, to require an amendment of the petition to cover this new material because relatrix already has been put on notice as to the existence and scope of the issue: in a general sense, by paragraph 11 of the petition; and, in a specific sense, by the filing of these interrogatories. We think that answers to the questions will be of substantial aid in preparing for the concluding portion of the trial, or hearing, of the case.

The remaining two questions fall into a different category. They are designed to probe relatrix's mental processes. Question no. 4 asks the "purpose" of the alleged trip, and no. 5 asks "why" relatrix did not advise defendant of her intended absence. The real issue is whether she secured adequate care for the children during her alleged absence, and we do not believe that her psychological motivation is relevant in the present circumstances of the case. For example, in Crippen v. Pulliam, 61 Wash. 2d 725, 380 P. 2d 475, 480, 481 (1963), defendant physician in a malpractice suit properly refused to answer, on interrogatories, the question: "Doctor, did you feel you were careful enough in this case?" Also, in Ex Parte Driver, 50 S. 2d 413, 417, 419 (Ala., 1951), the court sustained the refusal of a defendant to answer an interrogatory: "If you refused to pay J. E. Driver his wages then due to

him on January 28, 1950 give your reason for your refusal", on the ground that it called for an explanation of the mental processes of defendant.

## ORDER

And now, December 31, 1966, the objections of relatrix to questions nos. 1, 2 and 3 are dismissed and relatrix is directed to answer them within 20 days from the date of this order; and the objections to questions nos. 4 and 5 are sustained.